# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-cv-22462-BLOOM/Louis

MICHAEL MCCOY, on his own behalf
and on behalf of all others similarly situated,

      Plaintiff,

v.

SANDALS RESORTS INTERNATIONAL,
LTD., d/b/a Sandals, and UNIQUE
VACATIONS, INC., d/b/a Unique Vacations,

      Defendants.

_____/

## <u>ORDER</u>

**THIS CAUSE** is before the Court upon Defendant Unique Vacations, Inc.'s ("UVI") Motion to Dismiss Plaintiff's Class Action Complaint, ECF No. [14] ("Motion"), which Defendant Sandals Resorts International, Ltd. ("SRI"), joins in and adopts, in addition to its own Motion to Dismiss, *see* ECF No. [15] at 7. Plaintiff Michael McCoy ("Plaintiff") filed his Response in Opposition to the Motion, ECF No. [40] ("Response"), to which Defendants UVI and SRI (collectively, "Defendants") jointly filed their Reply, ECF No. [41] ("Reply"). Plaintiff further filed two Notices of Supplemental Authority. ECF Nos. [44] & [48]. Defendants also filed a Notice of Supplemental Authority. ECF No. [50]. The Court has reviewed the Motion, all supporting and opposing submissions, the arguments presented at the Hearing, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is granted.

## I. BACKGROUND

Plaintiff filed this putative class action on June 13, 2019, asserting two claims for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"), and one claim for unjust enrichment against Defendants for allegedly charging guests at certain Sandals resorts throughout the Caribbean a local government "tax" that Defendants secretly retained. ECF No. [1] ("Complaint").

Plaintiff is a citizen of New York who, along with his wife and two minor children, stayed at Sandals Resorts on seven separate occasions in 2013, 2014, and 2016-2019. *Id.* ¶ 7. SRI is a Jamaican corporation that owns and operates nineteen resorts located throughout the Caribbean. *Id.* ¶ 8. UVI is a Delaware corporation with its principal place of business in Miami, Florida, and it operates as the sales, marketing and public relations arm of SRI. *Id.* ¶ 9. Plaintiff alleges that UVI is SRI's "world-wide marketing agent" or, alternatively, that UVI is the "owner or co-owner, operator or co-operator and/or manager or co-manager of SRI's resorts." *Id.* ¶¶ 12, 14. The instant action "seeks damages for current and former guests at Sandals' resorts throughout the Caribbean . . . who were charged a local government 'tax' and/or deceived into paying such tax (in whole or in part) that was, in fact, being secretly retained by Defendants." *Id.* ¶ 1.

Specifically, Plaintiff alleges that "Defendants' marketing structure presents consumers with a single price for a vacation package," which Defendants represent includes all taxes, while also noting that this price is "subject to change at any time due to the imposition of taxes or other government charges." *Id.* ¶ 2. "This marketing structure gives the net impression that Defendants collect from customers the actual taxes owed on the purchase of their vacation packages, which are then passed through to the government." *Id.* In fact, Plaintiff contends that Defendants "only remit a percentage of the amounts they collect as 'taxes' from the consumers to the government,

illegally retaining the rest for themselves." *Id.* ¶ 3. "Defendants further omit that they collect certain taxes for guests under 12-years-old [sic], which is prohibited under the applicable [Child Tax Prohibition] law[s]." *Id.* ¶ 4. Plaintiff brings this putative class action on behalf of two nationwide subclasses of (1) "[a]ll persons and entities in the United States who, within the applicable limitations period, purchased a vacation package from a Sandals or Beaches Resort located in a country where Sandals has a Tax Retention Agreement," and (2) "[a]ll persons and entities in the United States who, within the applicable limitations period, purchased a vacation package from a Sandals or Beaches Resort located in a country with a Child Tax Prohibition for a child who was within the age to which the Child Tax Prohibition applied at the time of purchase." *Id.* ¶ 31.

## A. Forum-Selection Clause and Choice of Law Provision

As noted above, Plaintiff and his family have visited the Sandals Resorts on seven separate occasions from 2013 to 2019. ECF No. [1] ¶ 7. Further, Plaintiff has an additional upcoming stay booked at the TCI Resort that is set to begin on February 14, 2020. ECF No. [14-1] at 3, ¶ 8. For each stay Plaintiff booked at the TCI Resort, he was provided with an Invoice in advance of his departure, which included the following language: "IMPORTANT TERMS AND CONDITIONS CONCERNING YOUR BOOKING THAT AFFECT YOUR LEGAL RIGHTS ARE INCLUDED/ATTACHED AS AN IMAGE TO THIS E-MAIL – IF THE IMAGE IS NOT BEING DISPLAYED, PLEASE ACCEPT THE IMAGE AND READ CAREFULLY PRIOR TO YOUR ARRIVAL AT THE RESORT." *Id.* at 19. Relevant to the instant Motion, the attached Terms & Conditions included, among other things, the following forum-selection clause and choice of law provision:

**17. FORUM SELECTION AND CHOICE OF LAW:**

. . . .

**B. CLAIMS WHICH INCLUDE HOTEL AND/OR SANDALS RESORTS INTERNATIONAL, LTD.** . . . ANY CLAIMS WHATSOEVER ARISING FROM, IN CONNECTION WITH, OR INCIDENTAL TO ANY PERSONAL INJURY, ILLNESS OR DEATH, THAT INCLUDE ANY CLAIM WHATSOEVER AGAINST SANDALS RESORTS INTERNATIONAL LIMITED, OR THE HOTEL, HOTEL MANAGEMENT COMPANY, AND/OR THEIR AFFILIATES, SUBSIDIARIES, DIRECTORS, OFFICERS, OR EMPLOYEES, AND TO WHICH CLAIM UNIQUE TRAVEL IS ALSO A PARTY, SHALL BE LITIGATED SOLELY AND EXCLUSIVELY IN THE COURTS OF THE COUNTRY IN WHICH THE HOTEL IS PHYSICALLY LOCATED AND GOVERNED EXCLUSIVELY BY THE LAWS OF THE COUNTRY IN WHICH THE HOTEL IS PHYSICALLY LOCATED.

*Id.* at 22 ("Clause 17.B.").

Moreover, the Terms & Conditions contained an additional notice that, as a condition to booking a stay at a Sandals Resort, guests would be required to agree to the following forum-selection clause upon arrival and check in at the Resort:

**C. NOTICE OF REQUIRED SIGNING AND ASSENT AT HOTEL CHECK-IN** . . . [T]he Guest will be required DURING THE HOTEL CHECK-IN PROCESS UPON ARRIVAL, to separately and specifically sign and assent to the following forum selection and choice of law provisions: The undersigned Guest(s) HEREBY KNOWINGLY AND VOLUNTARILY AGREES that any and all claims that each such Guest may have against Sandals Resorts International, Ltd., the hotel, hotel management company, and/or their affiliates, subsidiaries, insurers, directors, officers, and employees, in connection with or in any way incident or related to the undersigned Guest's (or Guests') stay at the hotel/resort, shall be governed solely by the laws of the country in which the Resort is physically located as the exclusive choice of law, and further that the courts of the country in which the Resort is physically located shall be the exclusive venue/forum for any proceedings, claims or litigation whatsoever. IF THE GUEST DOES NOT SIGN AND ASSENT TO SUCH TERMS AND CONDITIONS AT CHECK-IN PROCESS, THE GUEST WILL NOT BE ALLOWED TO CHECK-IN AND WILL BE DENIED ACCESS TO THE HOTEL. ACCORDINGLY, ADVANCE NOTIFICATION OF THIS REQUIREMENT IS HEREBY PROVIDED.

*Id.* at 22-23 ("Clause 17.C."). These Terms & Conditions also included a refund schedule, should a guest choose not to accept the terms set forth above. *Id.* at 23.

Attached to the Defendant's Motion is a Declaration from Tammy Gonzalez, UVI's Chief Executive Officer. *Id.* at 2-16. Ms. Gonzalez attests that over the course of his seven stays, Plaintiff received at least eighteen (18) Invoices with the Terms & Conditions attached, each providing Plaintiff with notice of the forum selection and choice of law provisions before departing for TCI. Plaintiff did not object to these provisions at any point. *See generally id.*

Additionally, each time Plaintiff stayed at the TCI Resort, he was provided with an On Resort Guest Registration, containing the following forum selection and choice of law provisions:

> **8.** **Forum Selection and Choice of Law:** The undersigned Guest(s) HEREBY KNOWINGLY AND VOLUNTARILY AGREES that any and all claims that each such Guest may have against Sandals Resorts International, Ltd., the hotel, hotel management company, and/or their parent corporation, affiliates, subsidiaries insurers, directors, officers, employees, successors, assigns, agents and representatives in connection with or in any way incident or related to the undersigned Guest's (or Guests') stay at the hotel/resort, shall be governed solely by the laws of Turks And Caicos as the exclusive choice of law, and further that the courts of Turks And Caicos shall be the exclusive venue/forum for any proceedings, claims, or litigation whatsoever.

*Id.* at 26. In order to be permitted to stay at the Resort, Plaintiff and his family were required to agree to this On Resort Guest Registration at the time of check in. *Id.* at 22-23. Plaintiff signed and assented to these forum selection and choice of law provisions on at least four separate stays at the TCI Resort. *See id.* at 6, 8, 11, 12-13.

**B. UVI's Motion to Dismiss**

On July 8, 2019, both UVI and SRI filed separate Motions to Dismiss. ECF Nos. [14] & [15]. In the instant Motion, UVI asserts five independent bases for dismissal. First, UVI argues that the Complaint should be dismissed under the doctrine of *forum non conveniens* because Plaintiff agreed to a binding forum-selection clause requiring that he litigate this action in the Turks & Caicos Islands ("TCI"). UVI's Motion also seeks dismissal for (1) failure to plead fraud-based claims with particularity; (2) lack of Article III standing; (3) failure to state a FDUTPA

claim because the Complaint does not allege Florida misconduct or actual damages; and (4) failure to state an unjust enrichment claim because it is impermissibly duplicative of the FDUTPA claim and based on an express contract. ECF No. [14]. SRI's Motion adopts each ground for dismissal asserted by UVI and argues that (1) the Court lacks both general jurisdiction and specific jurisdiction with respect to SRI, and (2) that the claims against SRI should be dismissed for insufficient service of process. ECF No. [15].

On July 17, 2019, Defendants filed a Motion to Stay Briefing on SRI's Motion to Dismiss. ECF No. [18]. Moreover, on July 19, 2019, Plaintiff filed a Renewed Motion for Leave to Conduct Jurisdictional Discovery and to Stay Briefing on SRI's Motion to Dismiss. ECF No. [23]. On August 2, 2019, this Court issued an Omnibus Order on both parties' Motions, concluding that "the less burdensome course is for the Court to first resolve Defendants' *forum non conveniens* arguments asserted in UVI's Motion to Dismiss and adopted by SRI in its Motion to Dismiss" before permitting Plaintiff to conduct jurisdictional discovery. ECF No. [37] at 3. As such, the Court denied Plaintiff's request to conduct jurisdictional discovery and stayed briefing on the issues of personal jurisdiction and insufficient service of process raised in SRI's Motion to Dismiss, pending the Court's ruling on the five grounds for dismissal asserted in UVI's Motion to Dismiss and adopted by SRI.[1] *Id.* at 4.

On November 7, 2019, this Court held a Hearing on Defendants' Motion to Dismiss, which was attended by Plaintiff's counsel and Defendants' counsel. During the Hearing, Defendants argued primarily that the forum-selection clause in the Terms & Conditions and in the On Resort Guest Registration should be enforced because Plaintiff received notice of and agreed to the clause

---

[1] For the remainder of this Order, the Court will refer to UVI's Motion to Dismiss, ECF No. [14], as "Defendants' Motion to Dismiss," based on the fact that SRI adopted the grounds for dismissal in UVI's Motion, *see* ECF No. [15] at 7.

on numerous occasions, the clause is valid and enforceable, and the *forum non conveniens* analysis weighs in favor of dismissal. Conversely, Plaintiff argued that the forum-selection clause should not apply in this case because Plaintiff's claims fall outside the scope of the forum-selection clause and because TCI is not an adequate and available alternative forum.

## II.    LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013) ("*Atl. Marine*"). Ordinarily, to obtain dismissal based on the doctrine of *forum non conveniens*, a movant must demonstrate that "(1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014).

"The calculus changes, however, when the parties' contract contains a valid forum-selection clause." *Atl. Marine* 571 U.S. at 63. As the United States Supreme Court has noted, the existence of a forum-selection clause is essentially case dispositive in the *forum non conveniens* analysis. *See id.* at 62; *see also GDG Acquisitions, LLC,* 749 F.3d at 1028 ("an enforceable forum-selection clause carries near-determinative weight" in the *forum non conveniens* analysis). "Only under extraordinary circumstances unrelated to the convenience of the parties should a . . . motion [to dismiss based on *forum non conveniens*] be denied." *Atl. Marine*, 571 U.S. at 62. Once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper. *See id.* at 63; *Stiles v. Bankers Healthcare Grp., Inc.,* 637 F. App'x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). Indeed, the party

seeking to avoid the forum-selection clause bears a "heavy burden of proof" in establishing that the clause should be set aside. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991).

The existence of a valid forum-selection clause requires courts to adjust their *forum non conveniens* analysis in three ways. *Atl. Marine*, 571 U.S. at 63.[2] "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, courts "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Accordingly, the analysis must only consider public interest factors. *Id.* "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id.* at 64. Finally, "[t]he court in the contractually selected venue should not apply the law of the transferor venue to which the parties waived their right." *Id.* at 65-66 (footnote omitted).

The Supreme Court's determination that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring), stems, in part, from the recognition that these clauses represent the parties' *ab initio* agreement as to the most proper forum. *Id.* at 31; *Atl. Marine*, 571 U.S. at 62 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."); *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 16-17 (1972).

In considering a motion to dismiss for *forum non conveniens*, a court must accept the facts in the plaintiff's complaint as true, "to the extent they are uncontroverted by the defendants' affidavits." *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000)

---

[2] Although determined in the context of a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Supreme Court expressly noted that these "same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses." *Atl. Marine*, 571 U.S. at 66 n.8.

(quoting *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam)); *Delong Equip. Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977)). In ruling on a motion to dismiss for *forum non conveniens*, a court may "consider matters outside the pleadings if presented in proper form by the parties." *MGC Commc'ns, Inc. v. BellSouth Telecomms., Inc.*, 146 F. Supp. 2d 1344, 1349 (S.D. Fla. 2001); *see also Grp. CG Builders & Contractors v. Cahaba Disaster Recovery, LLC*, 534 F. App'x 826, 829-30 (11th Cir. 2013) (affidavit in support of motion to dismiss for *forum non conveniens* properly considered). "When affidavits conflict, the court is inclined to give greater weight to the plaintiff's version of the [] facts and to construe such facts in the light most favorable to the plaintiff." *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (citing *Delong Equip. Co.*, 840 F.2d at 845).

In analyzing the application of a forum-selection clause, courts must determine whether the clause is valid and whether the claim at issue falls within the scope of the clause — by looking to the language of the clause itself. *See Bah. Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."). If a court concludes that a valid and enforceable forum-selection clause exists, it must apply the Supreme Court's modified *forum non conveniens* analysis and assess (1) whether an adequate alternative forum is available, and (2) whether the public factors weigh in favor of dismissal. *Atl. Marine*, 571 U.S. at 63-65; *GDG Acquisitions, LLC*, 749 F.3d at 1028; *Pappas*, 585 F. App'x at 965.

## III.    DISCUSSION

In their Motion, Defendants first argue that the Complaint should be dismissed under the doctrine of *forum non conveniens* because Plaintiff agreed to a binding, valid, and enforceable

forum-selection clause requiring that he litigate this action in TCI. Plaintiff, on the other hand, contends that his FDUTPA and unjust enrichment claims are beyond the scope of the forum-selection clause. Moreover, Plaintiff argues that if the forum-selection clause does apply, it is invalid and unenforceable, and that the *forum non conveniens* factors do not warrant dismissal. The Court will consider each argument in turn.

## A. Validity of the Forum-Selection Clause

First, the Court must determine whether the forum-selection clause at issue is valid. "Forum-selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the circumstances." *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009) (citing *Shute,* 499 U.S. at 593-95). Further, "the policy considerations for affording forum-selection clauses a presumption of validity in the context of freely negotiated agreements apply equally to form contracts drafted by cruise ships and resorts." *Sun Tr. Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1257 (S.D. Fla. 2001) (citing *Shute*, 499 U.S. at 593). The only difference is that "forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness." *Shute*, 499 U.S. at 595.

A forum-selection clause will be found unreasonable under the circumstances, and thus unenforceable, only where: (1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of their day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the provision would contravene a strong public policy. *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998) (citing *Shute*, 499 U.S. at 594-95; *M/S Bremen*, 407 U.S. at 15-18).

Plaintiff's Response does not clearly set forth which of these factors he is asserting. On the one hand, the Response notes that "[t]he first, second, and third of these factors support invalidation." ECF No. [40] at 6. On the other hand, Plaintiff seemingly argues that the first, third,[3] and fourth factors support invalidation in the substantive text of his Response. *Id.* at 6-9. Furthermore, the opinion that Plaintiff attaches to his first Notice of Supplemental Authority, ECF No. [44], applies only to the fourth factor. Thus, in the interest of fully addressing each of the parties' arguments, the Court will analyze all four factors below. However, as Plaintiff appears to have combined the arguments in his Response with regard to the second and third factors, the Court will address these factors simultaneously.

### 1. Fraud or Overreaching

In determining whether a non-negotiated forum-selection clause should be invalidated due to fraud or overreaching, courts first look at whether the clause was reasonably communicated to the consumer. *Krenkel*, 579 F.3d at 1281. "A useful two-part test of 'reasonable communicativeness' takes into account the clause's physical characteristics and whether the plaintiffs had the ability to become meaningfully informed of the clause and to reject its terms." *Id.* Plaintiff argues that the forum-selection clause should be invalidated due to fraud or overreaching because, while he received the e-mailed Invoices containing a notice of the forum-selection clause "buried"[4] in the Terms & Conditions, he was never presented with the On Resort

---

[3] Plaintiff's arguments regarding the third factor — that the chosen forum would deprive Plaintiff of a remedy — address some issues that are relevant to the second factor — that Plaintiff would be deprived of his day in court due to inconvenience or unfairness. *See* ECF No. [40] at 7-8.

[4] Plaintiff's Response contains no arguments challenging the physical characteristics of the forum-selection clause, aside from noting that it was "buried" in the Terms & Conditions attached to the Invoice e-mails. ECF No. [40] at 6. To the extent Plaintiff attempts to call the physical characteristics into question here, the Court notes that this passing reference is an insufficient attempt to do so. "A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him." *Phillips v. Hillcrest Medical Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (citation omitted).

Guest Registration at check in on any of his stays at the TCI Resort. ECF No. [40] at 6. Thus, Plaintiff contends that he was not able to become meaningfully informed and agree to the forum-selection clause. *Id.*

"In order to be enforceable, the forum-selection clause in a form contract must reasonably warn the consumer that the terms and conditions are important matters affecting legal rights." *Sun Tr. Bank*, 184 F. Supp. 2d at 1259-60. "It is undisputed that Plaintiff received the language of the forum-selection clause." *Aviation One of Fla., Inc. v. Clyde & Co.*, No. 6:13-cv-1243-Orl-41DAB, 2016 WL 4494459, at *4 (M.D. Fla. Aug. 26, 2016). The Invoices Plaintiff received in advance of his departures included the following language: "IMPORTANT TERMS AND CONDITIONS CONCERNING YOUR BOOKING THAT AFFECT YOUR LEGAL RIGHTS ARE INCLUDED/ATTACHED AS AN IMAGE TO THIS E-MAIL – IF THE IMAGE IS NOT BEING DISPLAYED, PLEASE ACCEPT THE IMAGE AND READ CAREFULLY PRIOR TO YOUR ARRIVAL AT THE RESORT." ECF No. [14-1] at 19. Further, these Invoices attached the Terms & Conditions. *Id.* at 22. Thus, Plaintiff was clearly put on notice that his legal rights would be affected by the documents attached to the Invoices well before he arrived at the TCI Resort for check in, and courts have concluded that this advance receipt is sufficient. *See Miyoung Son v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at *5 (S.D. Fla. Sept. 5, 2008) ("Mrs. Son chose not to read the e-mails, but the e-mails provided sufficient notice of the forum selection and choice of law clauses her family would be required to sign upon arrival at the Atlantis Resort."); *see also Nash v. Kloster Cruise A/S*, 901 F.2d 1565, 1567 (11th Cir. 1990) (holding that the warning to "read the terms and conditions" provided reasonable notice).

The Court is also unpersuaded by Plaintiff's arguments that he did not have the opportunity to become meaningfully informed of the forum-selection clause and to reject its terms with

impunity because he was not presented with the clause at check in. Plaintiff visited the TCI Resort on seven different occasions between 2013 and 2019. ECF No. [1] ¶ 7. He has received the Terms & Conditions, which included the forum-selection clause, at least eighteen (18) times and has signed the On Resort Guest Registration at check in on each of his stays. ECF No. [14-1] at 2-16. Plaintiff's "first visit gave [him] a reasonable opportunity to consider and reject the forum-selection clause at issue," on each of his following six stays. *See Krenkel*, 579 F.3d at 1282; *Horberg v. Kerzner Resorts Int'l Ltd.*, No. 07-20250-CIV, 2007 WL 7274825, at *3 (S.D. Fla. Aug. 6, 2007) (enforcing a forum-selection clause on the basis that the plaintiffs had visited the Atlantis resort on previous occasions and thus "had a reasonable opportunity to consider and reject the forum selection clause"). Therefore, the Court concludes that the forum-selection clause was reasonably communicated to Plaintiff and thus was not signed as a result of fraud or overreaching.

### 2. Inconvenience or Unfairness and Deprivation of a Remedy

Plaintiff argues that requiring this action to be litigated in TCI would deprive him of both his day in court and of a remedy under FDUTPA because (1) TCI courts do not permit contingency fees and often require parties bringing suit to post a bond; (2) jury trials and class actions are rare; (3) TCI does not have a comparable cause of action under FDUTPA; and (4) judgments from TCI courts do not have extra-territorial effect, thus preventing Plaintiff from forcing Defendants to change their alleged unfair and deceptive business practices in the United States. Plaintiff therefore argues that these factors, in combination, render TCI courts inadequate and unavailable.

The Eleventh Circuit Court of Appeals has explained that to invalidate a forum-selection clause on the ground that the plaintiff would be deprived of their day in court because of inconvenience or unfairness, "a plaintiff must show that litigating 'in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his

day in court.'" *Rucker v. Oasis Legal Fin., LLC*, 632 F.3d 1231, 1237 (11th Cir. 2011). "The financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum selection clause." *P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003). Likewise, any inconvenience the plaintiff would suffer by being forced to litigate in the forum specified in the forum-selection clause was foreseeable at the time of contracting. *Rucker*, 632 F.3d at 1237.

Moreover, with regard to whether the chosen law would deprive the plaintiff of a remedy, the Eleventh Circuit has held that it will not invalidate forum-selection clauses "simply because the remedies available in the contractually chosen forum are less favorable than those available in the courts of the United States. Instead, [courts should] declare unenforceable choice clauses only when the remedies available in the chosen forum are so inadequate that enforcement would be fundamentally unfair." *Lipcon*, 148 F.3d at 1297 (citing *Shute*, 499 U.S. at 595; *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360-61 (2d Cir. 1993) ("In the absence of other considerations, the agreement to submit to arbitration or the jurisdiction of the English courts must be enforced even if that agreement tacitly includes the forfeiture of some claims that could have been brought in a different forum."); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 958 (10th Cir. 1992) ("The fact that an international transaction may be subject to laws and remedies different and less favorable than those of the United States is not a valid basis to deny enforcement, provided that the law of the chosen forum is not inherently unfair.")). A forum is considered adequate if it "provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiff's injuries." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2001).

Through the information and affidavits submitted in the parties' briefing and the arguments presented at the Hearing, it is evident that Plaintiffs have not established that their remedy would be "altogether lost" in litigating this action in TCI. *See Gordon v. Sandals Resorts Int'l, Ltd.*, No. 19-22677-CIV, 2019 WL 5742155, at *3 (S.D. Fla. Nov. 5, 2019); *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1238 (S.D. Fla. 2006), *aff'd*, 240 F. App'x 822 (11th Cir. 2007) (concluding that Guatemala is an adequate forum even though the plaintiff could not assert its RICO claim because it would not be deprived of all remedies). Notably, Plaintiff's arguments that class actions and jury trials are unavailable lack support. Rather, the affidavits both parties submitted on behalf of attorneys in TCI note that, although rare, these mechanisms are available in TCI courts. *See* ECF No. [14-2] at ¶¶ 14-15 (discussing the availability of jury trials and group litigation for collective redress in TCI courts); ECF No. [40-2] ¶¶ 10-11 (same). The Plaintiff's argument regarding the lack of a contingency fee recovery has been squarely addressed by the Eleventh Circuit in *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996):

> As cherished as trial by jury is in our law, and as cherished as contingency fee arrangements have become to some plaintiffs and their attorneys, Magnin has not cited us to any Supreme Court or court of appeals decision giving such considerations substantial weight in *forum non conveniens* analysis. The argument is particularly weak in regard to contingency fees. In *Coakes v. Arabian American Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987), the Fifth Circuit held that the ban against contingency fees in England should not significantly influence the *forum non conveniens* determination, and observed that, "[i]f the lack of a contingent fee system were held determinative, then a case could almost never be dismissed because contingency fees are not allowed in most forums." The same is pretty much true of trial by jury. As the Supreme Court noted in [*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 252 n.18 (1981),] "jury trials are almost always available in the United States, while they are never provided in civil law jurisdictions," and "[e]ven in the United Kingdom, most civil actions are not tried by a jury." Yet, there are numerous decisions dismissing cases in favor of a civil law jurisdiction forum, and in favor of the United Kingdom as a forum.

*Id.* at 1430. Thus, the Court finds Plaintiff's arguments regarding the lack of contingency fees and jury trials in TCI unavailing.

Further, the Eleventh Circuit has repeatedly rejected the argument that a forum-selection clause should be invalidated based on the financial difficulty of litigating an action in the preselected forum due to the lack of contingency fees and the potential imposition of a bond in that forum. *Rucker*, 632 F.3d at 1237 ("[T]he financial difficulty that a party might have in litigating in the selected forum is not a sufficient ground by itself for refusal to enforce a valid forum-selection clause." (quoting *P&S Bus. Machs., Inc.*, 331 F.3d at 807)); *Gordon*, 2019 WL 5742155, at *4 (noting that "the unavailability of contingency fees does not invalidate a forum selection clause even if their unavailability would make it impossible for Gordon to bring a class action" (citing *Giglio v. Sub. s.n.c v. Carnival Corp.*, No. 12-21680-CIV, 2012 WL 4477504, at *8 (S.D. Fla. Sept. 26, 2012) (collecting cases) ("Decisions in this district and elsewhere have found that the lack of class action procedures in a forum does not render that forum inadequate."), *aff'd*, 523 F. App'x 651 (11th Cir. 2013))). Any inconvenience that the party might suffer from being forced to litigate their claims in the selected forum "was foreseeable at the time of contracting. In that circumstance, a plaintiff must show that litigating 'in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes *be deprived of his day in court.*'" *Rucker*, 632 F.3d at 1237 (quoting *M/S Bremen*, 407 U.S. at 17-18). Plaintiff has failed to establish that the financial difficulty here would, for all practical purposes, deprive him of his day in court. As such, the Court concludes that this alleged financial difficulty does not render the forum-selection clause unenforceable.

Plaintiff's arguments with regard to the deprivation of his remedies under FDUTPA are equally unpersuasive. The affidavits and arguments presented at the Hearing establish that TCI provides comparable alternative avenues of relief through common law tort and contract actions. ECF No. [14-2] ¶ 24. In addition, Plaintiff may still pursue his unjust enrichment claim in TCI,

along with other equitable remedies. *See* ECF No. [1-3] (asserting claim for unjust enrichment). Thus, it is clear that Plaintiff's remedies would not be "altogether lost," and "the possibility of Plaintiff being deprived of some relief is not sufficient to find that the [foreign] forum is inadequate." *Gordon*, 2019 WL 5742155, at *3 (quoting *Lisa, S.A.*, 441 F. Supp. 2d at 1238). Plaintiff presents no legal support for the argument that the combination of all of these factors renders TCI inadequate. Further, the inability to assert a FDUTPA claim in TCI does not render a forum-selection clause unenforceable. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951-52 (11th Cir. 1997) ("[T]he Supreme Court explicitly rejected the contention that dismissal should be barred solely because of the possibility of an unfavorable change in law. Only when the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all, [will] the unfavorable change in law . . . be given substantial weight. . . . Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. . . . [A] plaintiff's inability to assert a RICO claim in the foreign forum does not preclude forum non conveniens dismissal." (citations omitted) (internal quotation marks omitted)); *Lipcon*, 148 F.3d at 1297 ("We will not invalidate choice clauses, however, simply because the remedies available in the contractually chosen forum are less favorable than those available in courts in the United States.").

Notably, the district court in *Gordon*, which Defendants submitted to the Court in their Notice of Supplemental Authority, ECF No. [50], recently concluded that TCI was an adequate alternative forum to bring the plaintiff's class FDUTPA and unjust enrichment claims. 2019 WL 5742155, at *3. Specifically, the *Gordon* court declined to invalidate an identical forum-selection clause to the one at issue because plaintiff had the ability to litigate her claim and seek redress through TCI courts. *Id.* In doing so, the *Gordon* court relied on another recent case out of the

Southern District, noting that "United States Magistrate Judge Torres recently found that the Turks and Caicos provides an adequate alternative forum for the plaintiffs to bring a [FDUTPA] claim because the plaintiffs did not show that they would be 'deprived of any remedy' or 'treated unfairly' in the Turks and Caicos." *Id.* (citing *Regent Grand Mgmt. Ltd. v. Tr. Hospitality LLC*, No. 18-21445-CIV, 2019 WL 1112553, at *11 (S.D. Fla. Jan. 9, 2019) (Torres, J.) (case voluntarily dismissed before Judge Williams adopted R&R)). The court in *Regent Grant Management Limited* also concluded that TCI was an adequate alternative forum for the plaintiffs to assert a FDUTPA claim, among others, because TCI law recognized similar causes of action and the plaintiffs "presented no evidence that [their] remedy would be 'altogether lost' in the instant action, and the possibility of Plaintiff[s] being deprived of some relief is not sufficient to find that the [TCI] forum is inadequate." *Regent Grand Mgmt. Ltd.*, 2019 WL 1112553, at *11 (quoting *Lisa, S.A.*, 441 F. Supp. 2d at 1238); *see Republic of Panama*, 119 F.3d at 952 ("Accordingly, the three circuits that have considered this issue have concluded that a plaintiff's inability to assert a RICO claim in the foreign forum does not preclude *forum non conveniens* dismissal"). The Court agrees with the reasoning in *Gordon* and *Regent Grand Management Limited* and concludes that TCI is an adequate alternative forum for Plaintiff in this case to assert his class FDUTPA and unjust enrichment claims. Accordingly, Plaintiff has failed to establish that the forum-selection clause should be invalidated because enforcing the clause would deprive him of his day in court or of a remedy.

### 3. Public Policy

Finally, a forum-selection clause may be invalidated if "enforcement of the clause would contravene public policy." *Krenkel*, 579 F.3d at 1281. "Public policy is an amorphous concept. . . . Accordingly, it has been held that the delicate and undefined power of courts to

declare a contract void as contravening public policy should be exercised with great caution, and only in cases free from substantial doubt." *Davis v. Oasis Legal Fin. Operating Co.*, 936 F.3d 1174, 1178 (11th Cir. 2019).

Plaintiff argues that the forum-selection clause should be invalidated because enforcement of the clause would contravene Florida's strong public policy against deceptive and unfair business practices. ECF No. [40] at 8-9. Plaintiff filed a Notice of Supplemental Authority, ECF No. [44], arguing that the Eleventh Circuit's recent opinion in *Davis* compels invalidating the forum-selection clause in this case. In *Davis*, the Eleventh Circuit invalidated a forum-selection clause because the clause violated Georgia's clear public policy prohibiting out-of-state forum-selection clauses in lending agreements. *Id.* at 1177-79. In invalidating the forum-selection clause, the *Davis* Court looked to an explicit statutory prohibition on out-of-state forum-selection clauses in lending agreements and a subsequent Georgia Supreme Court case holding that these clauses contravened Georgia's "clear public policy." *Id.* at 1179. However, the Court specifically noted that the "decision to invalidate the forum selection clause in [*Davis*] depend[ed] entirely on Georgia law," which clearly established Georgia's intent to stop payday lenders from skirting Georgia laws through the use of out-of-state forum-selection clauses. *Id.* at 1179, 1181 n.5. "Likewise, the decision here will depend on whether Florida has established a clear policy against the use of forum selection clauses to avoid the litigation of [FDUTPA] claims in Florida courts." *Gordon*, 2019 WL 5742155, at *4.

*Gordon* is particularly informative on the issue of whether the enforcement of forum-selection clauses violates Florida's public policy interests under FDUTPA. 2019 WL 5742155, at *4-5. Specifically, the *Gordon* court explained:

> Florida has a muddled public policy regarding whether a forum selection
> clause should be enforced against a plaintiff bringing a [FDUTPA] claim. Unlike

the Georgia [statute in *Davis*, FDUTPA] is silent on the issue of forum selection clauses. Fla. Stat. § 501.201, *et seq*. The Florida courts have conflicting holdings regarding when and if a forum selection clause is enforceable against a [FDUTPA] claim.

*Id.* at *4; *see id.* at *4-5 (discussing the conflicting holdings across Florida courts on whether forum-selection clauses are enforceable against FDUTPA claims). "Unlike the Georgia public policy in *Davis* which was 'built on a solid foundation,' the Florida public policy is not clear and the courts articulate conflicting policies regarding the application of forum selection clauses to FDUPTA claims and class action claims." *Id.* at *5 (citing *Davis*, 936 F.3d at 1178). Therefore, as in *Gordon*, the Court declines to find that enforcement of the forum-selection clause at issue here would contravene Florida's public policy.

### B. Scope of the Forum-Selection Clause

Next, the Court must determine whether Plaintiff's claims fall within the scope of the forum-selection clause. *See generally Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009). "In any case involving a forum-selection clause, the court must determine the scope of the clause and whether it covers the particular claims asserted." *Landau v. Jaffa*, No. 18-60772-CIV, 2018 WL 4778426, at *4-5 (S.D. Fla. July 19, 2018) (Seltzer, J.) (citing *Dublicom Ltd. v. Nat'l Merch. Ctr.*, No. 10-24563-Civ, 2011 WL 13223556, at *3 (S.D. Fla. Mar. 15, 2011)) (case voluntarily dismissed before Judge Gayles adopted R&R). "'[I]t is inappropriate . . . to depend solely on the legal labels used by the plaintiff to decide if his case arises out of the contract' when determining whether a forum-selection clause governs its claims." *Oribe Hair Care, LLC v. Canales*, No. 17-cv-20148, 2017 WL 2059582, at *4 (S.D. Fla. May 15, 2017) (quoting *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007)). "Instead, when ascertaining the applicability of a contractual provision to particular claims, [courts must] examine the substance of those claims, shorn of their labels." *Id.* at *4 (quoting *Phillips*, 494 F.3d at 388).

Thus, the court must assess "the relationship of the claim in question to the contract containing the forum-selection clause, among other considerations." *Asenov v. Sliversea Cruises, Ltd.*, No. 11-62360-CIV, 2012 WL 1136980, at *4 (S.D. Fla. Mar. 28, 2012). To determine whether the claim or relationship at issue falls within the scope of a forum-selection clause, courts must look to the language of the clause itself. *Byers*, 701 F.3d at 1340. "Under general contract principles, the plain meaning of a contract's language governs its interpretation." *Slater v. Energy Servs. Grp. Int'l, Inc.*, 643 F.3d 1326, 1330 (11th Cir. 2011) (citing *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 & n.11 (11th Cir. 2008)).

Where a clause refers to claims or actions "arising under or in connection with" the contract, the clause is taken to include "all causes of action arising *directly or indirectly* from the business relationship evidenced by the contract." *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (emphasis added), *aff'd*, 487 U.S. 22 ("*Ricoh Corp.*"); *see also Vernon v. Stabach*, No. 13-62378-CIV, 2014 WL 1806861, at *4 (S.D. Fla. May 7, 2014) ("[W]here the contracts at issue contain a broad forum-selection clause applying to 'any suit arising out of or in connection with' an agreement, federal courts have had no trouble finding statutory and tort claims arising directly or indirectly from the relationship evidenced by the contract to fall within the scope of the clause." (citations omitted)). A claim "relates to" a contract when "the dispute occurs as a fairly direct result of the performance of contractual duties." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001). However, a but-for relationship between the claims and the contract at issue, while indicative, does not necessarily mean the claims "relate to" the contract. *Byers*, 701 F.3d at 1341. "The Eleventh Circuit has indicated that a claim is more likely to be 'related to' a contract when that contract is 'the central document in the parties' relationship.'" *Espie v. Washington Nat. Ins. Co.*, No. 2:14cv6-MHT, 2014 WL 2921022, at *6

(M.D. Ala. June 27, 2014) (quoting *Int'l Underwriters AG v. Triple I: Int'l Investments, Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008)).

As an initial matter, there are two applicable forum-selection clauses in the instant case, both of which Plaintiff argues do not apply to his class FDUTPA claims. The first forum-selection clause at issue, Clause 17.B., states, in relevant part, "ANY CLAIMS WHATSOEVER ARISING FROM, IN CONNECTION WITH, OR INCIDENTAL TO ANY PERSONAL INJURY, ILLNESS OR DEATH . . . SHALL BE LITIGATED SOLELY AND EXCLUSIVELY IN THE COURTS OF THE COUNTRY IN WHICH THE HOTEL IS PHYSICALLY LOCATED." ECF No. [14-1] at 22. However, Defendants make no argument in their Reply to address Plaintiff's contention that his claims are outside the scope of Clause 17.B. *See* ECF No. [41] at 6-8 (addressing whether Plaintiff's claims fall within the scope of the forum-selection clause). Nonetheless, the Court need not address Clause 17.B.'s applicability because, as explained below, Plaintiff's claims fall within the scope of the second forum-selection clause at issue here — i.e., Clause 17.C.

Clause 17.C. states that the exclusive forum for "any and all claims . . . *in connection with or in any way incident or related to* the undersigned Guest's (or Guests') stay at the hotel/resort" shall be "the courts of the country in which the Resort is physically located."[5] ECF No. [14-1] at 22 (emphasis added). Specifically, Plaintiff argues that Clause 17.C.'s language does not include the class FDUTPA and unjust enrichment claims because they are not related to Plaintiff's stay. ECF No. [40] at 3-6. Thus, the Court must address whether Plaintiff's claims in this action fall

---

[5] The language of the forum-selection clause provided in the On Resort Guest Registration is virtually identical to the language of Clause 17.C. provided in the Terms & Conditions. *Compare* ECF No. [14-1] at 26, *with id.* at 22. The only difference between the language in these two clauses is that Clause 17.C. refers to the applicable forum as "the courts of the country in which the Resort is physically located," *id.*, whereas the On Resort Guest Registration clause specifies the applicable forum as "the courts of Turks And Caicos," *id.* at 26.

within the scope of Clause 17.C. *See Byers*, 701 F.3d at 1340 ("To determine if a claim falls within the scope of a clause, we look to the language of the clause.").

The Eleventh Circuit has held that "arising under or in connection with" language in a forum-selection clause should be interpreted to "include[] all causes of action arising directly or indirectly from the business relationship evidenced by the contract," *Ricoh Corp.*, 810 F.2d at 1070, including tort claims. *See Slater*, 634 F.3d at 1330-31; *see also Stiles*, 637 F. App'x at 560 (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983) (finding that tort claims are covered by a forum-selection clause when the claims "ultimately depend on the existence of a contractual relationship" between the parties), *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989)).

Clause 17.C. requires the parties to submit to the jurisdiction of TCI courts for "any and all claims . . . in connection with" Plaintiff's stay at the TCI Resort "or in any way incident or related to" Plaintiff's stay. ECF No. [14-1] at 22. Plaintiff's claims regarding his purchase of a vacation package booking his stay at the TCI Resort, and Defendants' alleged improper retention of some taxes paid by Plaintiff *in connection with* booking his stay at the resort, "aris[e] directly or indirectly" from his stay at the resort. *Ricoh Corp.*, 810 F.2d at 1070. The improper allocation of Plaintiff's payment remitted to secure his stay at the resort is "in connection with or in any way incident or related to" that stay. *See Gordon*, 2019 WL 5742155, *5; *Vernon*, 2014 WL 1806861, at *4 ("[W]here the contracts at issue contain a broad forum-selection clause applying to 'any suit arising out of or in connection with' an agreement, federal courts have had no trouble finding statutory and tort claims arising directly or indirectly from the relationship evidenced by the contract to fall within the scope of the clause." (citations omitted)). As such, the Court concludes that Plaintiff's claims fall within the scope of Clause 17.C.

### C. *Forum Non Conveniens* Analysis

Finally, if a valid, applicable, and enforceable forum-selection clause exists, the Court must conduct a *forum non conveniens* analysis. *Pappas*, 585 F. App'x at 965. "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart Org., Inc.*, 487 U.S. at 33 (Kennedy, J., concurring). "'Only under extraordinary circumstances unrelated to the convenience of the parties' should a court decline to enforce a forum-selection clause." *Stiles*, 637 F. App'x at 562 (quoting *Atl. Marine*, 571 U.S. at 62).

Generally, "[t]o obtain dismissal for *forum non conveniens*, 'the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'" *GDG Acquisitions, LLC*, 749 F.3d at 1028 (quoting *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1310-11 (11th Cir. 2001)). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause," *Atl. Marine*, 571 U.S. at 63, because "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases," *Stewart Org., Inc.*, 487 U.S. at 31, 33 (Kennedy, J., concurring).

Therefore, if a court concludes that a valid and enforceable forum-selection clause exists, it must apply the Supreme Court's modified *forum non conveniens* analysis and assess (1) whether an adequate alternative forum is available; and (2) whether the public factors weigh in favor of dismissal. *Atl. Marine*, 571 U.S. at 63-65; *GDG Acquisitions, LLC*, 749 F.3d at 1028. Further, "[a] binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." *GDG Acquisitions, LLC*, 749 F.3d at 1029. The Supreme Court explained that when a valid and enforceable forum-selection clause exists, the plaintiff bears the burden of establishing that dismissal is unwarranted. *Atl. Marine*, 571 U.S. at 63-64.

[T]he plaintiff's choice of forum merits no weight. *Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.* Because plaintiffs are ordinarily allowed to select whatever forum they consider most advantageous (consistent with jurisdictional and venue limitations), we have termed their selection the "plaintiff's venue privilege." But when a plaintiff agrees by contract to bring suit only in a specified forum — presumably in exchange for other binding promises by the defendant — the plaintiff has effectively exercised its "venue privilege" before a dispute arises. Only that initial choice deserves deference, and *the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed.*[6]

*Id.* (emphasis added) (footnote omitted) (citation omitted). Here, because there is a valid and enforceable forum-selection clause, the Court must apply the modified *Atlantic Marine* analysis.

### 1. Adequate Alternative Forum

The first part of this modified *forum non conveniens* analysis requires the Court to determine whether an adequate and available alternative forum exists. "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be [dismissed]." *Leon*, 251 F.3d at 1311. "A foreign forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Gordon*, 2019 WL 5742155, at *6 (citing *Piper Aircraft Co.*, 454 U.S. at 254 n.22). In addition, an adequate alternative forum exists when the defendant is "amenable to process" in the foreign forum. *Piper Aircraft Co.*, 454 U.S. at 254 n.22.

Nevertheless, dismissal may be improper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. Thus, to

---

[6] It is worth noting that, both in the Response and during arguments at the Hearing, Plaintiff stated that Defendants bear the burden of establishing that the case should be dismissed pursuant to the *forum non conveniens* analysis. *See, e.g.*, ECF No. [40] at 10. This position is a misstatement of the law; under *Atlantic Marine*, once established, the existence of a valid forum-selection clause governing the claims at issue shifts the burden from the party seeking dismissal to the non-movant to establish that dismissal is improper. 571 U.S. at 63. Thus, *Plaintiff* bears the burden in the instant case of establishing that dismissal in favor of the agreed-upon forum is unwarranted. *Id.* at 63-64.

constitute an adequate forum, the alternative forum must offer at least some relief. *Leon*, 251 F.3d at 1311. However, "[a]n adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001). "While '[s]ome inconvenience to litigants does not indicate that a forum is inadequate, courts have said that extreme amounts of partiality or inefficiency may render the alternative forum inadequate." *Leon*, 251 F.3d at 1312 (quoting *Satz*, 244 F.3d at 1283). Nonetheless, the forum will be found adequate unless "the plaintiff has substantiated his allegations of serious corruption or delay." *Id.* "Moreover, courts are loathe to hold that other forums are inadequate." *Miyoung Son*, 2008 WL 4186979, at *7 (citing *Leon*, 251 F.3d at 1312). Although a preselected forum could pose substantial logistical and financial problems, the forum will only be deemed inadequate once Plaintiff makes "a sufficient showing that such problems would preclude the fair and reasonably expeditious adjudication of the . . . issues presented by the pending case." *Leon*, 251 F.3d at 1314; *Lisa, S.A.*, 441 F. Supp. 2d at 1238. Here, UVI and SRI consent to jurisdiction in TCI, ECF No. [14] at 20, and, as discussed above, TCI is a jurisdiction that could provide Plaintiff relief for his FDUTPA and unjust enrichment claims.

Plaintiff also argues that TCI is an inadequate alternative forum because (1) TCI previously had issues with widespread corruption; (2) TCI is too financially dependent on the tourism revenue generated from Defendants' resorts, thus increasing the risk that Plaintiff will not receive a fair hearing; and (3) Defendants have historically received favorable treatment in TCI, which makes it unlikely that Plaintiff will receive justice litigating this case there. ECF No. [40] at 10-11. However, as noted above, "courts are loathe to hold that other forums are inadequate." *Miyoung Son*, 2008 WL 4186979, at *7. Further, unless "the plaintiff has substantiated his allegations of serious corruption or delay," the Court will conclude that TCI is an adequate alternative forum.

*Leon*, 251 F.3d at 1312. Here, Plaintiff supports his claims of corruption in TCI with news articles from 2009 and 2013 regarding TCI's likely bias in favor of Defendants. ECF No. [40] at 10-11. Yet, Plaintiff makes no "sufficient showing" that these historical problems with corruption in TCI continue today such that they "would preclude the fair and reasonably expeditious adjudication of the . . . issues presented by the pending case." *Leon*, 251 F.3d at 1314. Likewise, this Court's conclusion is further supported by the fact that two courts in the Southern District of Florida have recently concluded that TCI is an adequate alternative forum. *See Gordon*, 2019 WL 5742155, at *3 (concluding that TCI is an available and adequate alternative forum that can provide relief for plaintiff's class FDUTPA claims); *Regent Grand Mgmt. Ltd.*, 2019 WL 1112553, at *11 (concluding that TCI was an adequate alternative forum for a FDUTPA claim because plaintiffs failed to show that they would be "deprived of any remedy" or "treated unfairly" in TCI).

As such, Plaintiff has failed to sufficiently substantiate his allegations of corruption in TCI. Further, given the consistent conclusions in *Gordon* and *Regent Grand Management Limited* that TCI is an adequate and available alternative forum when examining similar FDUTPA and unjust enrichment claims as those at issue here, this Court concludes that TCI is an adequate and available alternative forum that would provide Plaintiff with sufficient relief.

### 2. Private and Public Interest Factors

As *Atlantic Marine* explains, when a valid and enforceable forum-selection clause exists, courts conducting the modified *forum non conveniens* analysis "should not consider arguments about the parties' private interests" because "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. Instead, Plaintiff's agreement to the forum-selection clause means that "the private-interest factors [] weigh entirely

in favor of the preselected forum" — namely, TCI. *Id.* "Whatever 'inconvenience' [Plaintiff] would suffer by being forced to litigate in the contractual forum as [he] agreed to do was clearly foreseeable at the time of contracting." *M/S Bremen*, 407 U.S. at 17-18.

Accordingly, the only factors relevant to whether Plaintiff has met his burden under the modified *forum non conveniens* analysis are the public interest factors. *Pappas*, 585 F. App'x at 967. Furthermore, because the public interest factors "will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64. These public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

The administrative difficulties flowing from court congestion generally are accorder little or no weight in the *forum non conveniens* analysis. *See Morse v. Sun Int'l Hotels Ltd.*, No. 98-7451-Civ, 2001 WL 34874967, at *6 (S.D. Fla. Feb. 26, 2001). Nonetheless, the Southern District of Florida has one of the busiest dockets in the United States, thus weighing in favor of dismissal.

Turning to the local interest in having localized controversies decided at home and the unfairness of burdening citizens in an unrelated forum with jury duty, the Court concludes that these factors weigh in favor of dismissal. "The Eleventh Circuit has long held that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. However, the burden of jury duty is a lesser weighted factor." *Van Hoy v. Sandals Resorts Int'l, Ltd.*, No. 11-24580-CIV, 2013 WL 1192316, at *12 (S.D. Fla. Mar. 22, 2013)

(citations omitted) (internal quotation marks omitted). TCI is heavily dependent on the tourism from Sandals Resorts and thus "has a strong interest in adjudicating claims that arose from the tourism activities of the Plaintiff[]." *Gordon*, 2019 WL 5742155, at \*6. The events in question in the instant action did not primarily occur in Florida such that it has a "local interest in adjudicating a localized controvers[y]." *Piper Aircraft Co.*, 454 U.S. at 241 n.6. Instead, the primary connection to Florida is that UVI "heavily markets" its vacation packages in Florida, that UVI has its principal place of business in Florida, and that future unnamed class action participants may be Florida residents. ECF No. [40] at 12, 15; *see Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1380 (S.D. Fla. 2011) ("Florida's interest is minimal, due to its attenuated connection with the circumstances of this case; the only apparent connection to Florida is a single defendant's incorporation in this state."); *Regent Grand Mgmt. Ltd.*, 2019 WL 1112553, at \*14 ("this dispute's connection with Florida is attenuated and a South Florida jury would [] have little interest in a case which concerns disputes between numerous individuals with connections to the TCI"). Therefore, these factors weigh in favor of dismissal.

Next, the interest in having a trial in a forum that is at home with the governing law and the interest in avoiding unnecessary problems with conflict of laws or with the application of foreign law both weigh in favor of litigating this action in TCI. Given the governing and enforceable choice of law provision in the instant case, TCI law governs the parties' dispute here. *See Lipcon*, 148 F.3d at 1295 (noting that "choice-of-law clauses 'are presumptively valid where the underlying transaction is fundamentally international in character.'" (citing *Roby*, 996 F.2d at 1362)); *Gordon*, 2019 WL 5742155, at \*7 (citing *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306, 311 (Fla. 2000) ("Generally, Florida enforces choice-of-law provisions

unless the law of the chosen forum contravenes strong public policy.")). As such, the Court concludes that these factors also weigh in favor of dismissal.

### 3. Reinstatement of Suit in Alternative Forum

Finally, the Court concludes that dismissal is appropriate here because Plaintiff can reinstate his lawsuit in TCI "without undue inconvenience or prejudice." *Leon*, 251 F.3d at 1311. Defendants have consented to Plaintiff's exercise of jurisdiction in TCI and have stated that they will accept service in TCI, should Plaintiff reinitiate this action there. ECF No. [14] at 20. Thus, Plaintiff has failed to sufficiently carry his burden to overcome the "practical result [] that forum-selection clauses should control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

Accordingly, the Court concludes that the modified *forum non conveniens* analysis favors dismissing this action. TCI is an adequate and available alternative forum, the public interest factors weigh in favor of the preselected forum, and Plaintiff can reinstate his lawsuit in TCI without undue prejudice. Likewise, given this Court's conclusion that there is a valid and enforceable forum-selection clause, that Plaintiff's class FDUTPA and unjust enrichment claims fall within the scope of the forum-selection clause, and that the *forum non conveniens* analysis weighs in favor of litigating in TCI, the Court finds that dismissal is required. As such, the Court need not address Defendants' remaining arguments in their Motion.

### 4. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [14]**, is **GRANTED**.

2. Based on the parties' forum-selection clause, this action is **DISMISSED WITHOUT PREJUDICE**.

3. The Clerk of Court is directed to **CLOSE** this case.

4. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED AS MOOT**, and all deadlines are **TERMINATED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 18, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record